BRONSON LAW OFFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530
H. Bruce Bronson, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
In re:

    CATUCCI HOME HEATING OIL, INC.,

       Debtor

----------------------------------------------------------------X

Case No. :15-22673 (RDD)

Chapter 11

## DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

CATUCCI HOME HEATING OIL, INC., debtor and debtor-in-possession (the "Debtor") proposes the following Third Amended Chapter 11 plan of Reorganization (the "Plan") pursuant to Title 11 of the United States Code:

## ARTICLE 1

## DEFINITIONS

For the purposes of this Plan, and the Third Amended Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under Sections 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) of the Code which may include Claims pursuant to Section 506(c) of the Code, including compensation for all professional services and reimbursement of expenses awarded by the Bankruptcy

Court.

2. "**Allowed Claim**" means a Claim timely filed before the Bar Date of October 1, 2015 at 5:00 p.m., without being designated as contingent, unliquidated or disputed in the Debtor's Bankruptcy Schedules and (a) as to which no objection has been filed within the time fixed in this Plan or (b) as to which any objection that is filed has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

4. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto filed by the Debtor pursuant to Bankruptcy Rule 1007.

5. "**Bar Date**" means October 1, 2015, at 5:00 p.m., the date by which a proof of Claim is required to be filed with the Clerk of the Court in this case.

6. "**Cash**" means cash or cash equivalent (a) of the Reorganized Debtor on hand as of the Effective Date, (b) realized from the Debtor's or Reorganized Debtor's business operations following the Effective Date, and/or (c) contributed or loaned to the Debtor or Reorganized Debtor by equity holders.

7. "**Claim**" shall mean a right to payment as set forth in Section 101(5) of the Code.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Code**" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

10. "**Confirmation**" means approval of this Plan by the Bankruptcy Court under Section 1129 of the Code following a hearing and notice thereof in accordance with the Code and Bankruptcy Rules.

11. "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

12. "C**onfirmation Order**" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Code confirming the Plan.

13. "**Disputed Claim**" means:

   (a) any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and
   (b) any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

14. "**Effective Date**" means the date upon which the Confirmation Order becomes a Final Order.

15. "**Equity Interests**" means the equity interest in the Debtor.

16. "**Final Order**" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review or rehearing has been waived or (b) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

17. "**Guarantor**" means William Catucci, the Debtor's primary Equity Interest holder.

18. "**Impaired**" means impairment of a class of claims or Equity Interests under Section 1124 of the Code.

19. "**Petition Date**" means May 12, 2015 the date on which the Debtor filed its voluntary Chapter 11 petition.

20. "**Priority Claim**" means all Claims that are entitled to priority pursuant to Code Section 507(a).

21. "**Priority Tax Claim**" means all Claims that are entitled to priority pursuant to Code

Sections 502(i) and 507(a)(8).

22. **"Pro Rata"** means with respect to a class member, in the same proportion as the amount of such member's Allowed Claim over the total Allowed Claims in such class.

23. **"Reorganized Debtor"** means Catucci Home Heating Oil, Inc. after the Effective Date.

24. "**Secured Claim**" means a Claim secured by a lien, judgment lien, mortgage or security interest on property of the Debtor's estate to the extent of the value of the property of the Debtor's estate securing such Claim, and any valid and enforceable right of setoff.

25. "**Secured Creditor**" means the holder of a Secured Claim.

26. "**Unsecured Allowed Deficiency Claim**" means the amount of debt that would otherwise be secured by a lien, judgment lien, mortgage, or security interest in property of the Debtor's estate in excess of the value of such property, if any assets had a value securing such debt.

27. "**Unsecured Claim**" means a claim that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Priority Tax Claim, or an Unsecured Allowed Claim, typically held by the Debtor's unaffiliated vendors.

28. "**Unsecured Creditor**" means the holder of an Unsecured Claim.

29. "**US Trustee Fees**" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory interest thereon.

All rules of construction contained in Section 102 of the Code apply in the construction of the Plan.

# ARTICLE 2

## UNCLASSIFIED ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

Pursuant to Section 1123(a)(1) of the Code, the Plan does not classify Administrative Expense Claims and Priority Tax Claims, which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall be paid in full in Cash on the later of the Effective Date, and entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The primary Administrative Expense Claims consist of professional fees and expenses for the Debtor's general bankruptcy counsel, Bronson Law Offices, P.C. Professional fees and expenses comprising Administrative Expense Claims are to be paid pursuant to approved fee applications upon notice and hearing.

2. **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid in full in cash over a period commencing on the Effective Date and ending on the date that is five (5) years from the Effective Date, in equal monthly installments bearing interest as provided in their respective proofs of claim. The Internal Revenue Service has filed a Priority Tax Claim in the amount of $13,842.66, bearing interest at the rate of 3%. This amount may be reduced once certain pre-petition payroll tax returns are filed. New York State has filed a Priority Tax Claim for sales and use tax in the amount of $42,221.56, bearing interest at the rate of 14.5% per annum and a Priority Tax Claim for withholding and corporate tax of $2,046.28, bearing interest at 7.5% per annum. Monthly payments on Allowed Priority Claims will be made as set forth below by the Debtor or Reorganized Debtor:

| Claimant | Total Claim | Interest (per annum) | Monthly Payment |
| --- | --- | --- | --- |
| IRS (POC 1-3) | $13,842.66 | 3% | $248.72 |
| NYS (sales and use) (POC 2-6) | $44,221.56 | 14.5% | $1,040.46 |
| NYS (withholding) (POC 2-6) | $2,046.28 | 7.5% | $41 |
|  |  | Total: | $1,330.18 |

3. **U.S. Trustee Fees**. Any unpaid U.S. Trustee Fees shall be paid on the Effective Date.

## ARTICLE 3

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1. **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Priority Tax Claims.

**Treatment-** The Allowed Priority Claims, if any, shall be paid in full in cash on the Effective Date. There are not expected to be any Allowed Priority Claims, other than Priority Tax Claims which are not included in this Class.

**Right to Vote.** Class 1 is Impaired under the Plan and entitled to vote to accept or reject the Plan.

**2. Class 2-Secured Claims.** Class 2 consists of all Allowed Secured Claims including judgment liens.

**Treatment**- There is only one Allowed Secured Claim and it will be paid $10,000, in Cash on the Effective Date and $45,000, in equal monthly Cash payments over sixty months, plus post-Effective Date on the unpaid portion thereof, interest at the annual rate of 5%. The holder of

the Class 2 Secured Claim shall have a replacement lien and a security interest in the Debtor's truck, until its Allowed Secured Claim is paid in full. The holder of the Class 2 Secured Claim will also be named as an additional insured in Debtor's insurance policy as it relates to the truck to the extent of the Allowed Secured Claim and Debtor will maintain adequate insurance on the truck. Class 2-Secured Claims will be personally guaranteed by the Guarantor.

**Right to Vote.** Class 2 is Impaired under the Plan and entitled to vote to accept or reject the Plan.

**3. Class 3-Unsecured Claims.** Class 3 consists of the Allowed Unsecured Claims and the Allowed Unsecured Deficiency Claim. No Unsecured Claims have been by the Bar Date filed except for such Claims set forth in the Bankruptcy Schedules that are non-contingent and not disputed.

**Treatment**-Unless otherwise agreed between the parties, all Class 3 Claims shall be paid a dividend of 10% of their Allowed Unsecured Claim in Cash on a Pro Rata basis over sixty months from the Effective Date in equal monthly installments, bearing post-Effective Date interest at the annual rate of 5%.

**Right to Vote.** Class 3-Unsecured Claims is Impaired and entitled to vote to accept or reject the Plan.

Class 3 Claims consist of the following, subject to reduction by agreement of the parties:

| Claimant | POC No. | Amount Claimed | Amount to be paid | Monthly payment at 5% interest |
|---|---|---|---|---|
| IRS | (POC 1-3) | 635.43 | $63.54 | $1.20 |
| NYS | 2-6 | $7,906.48 | $790.65 | $14.92 |
| Carmel Terminals* | Schedule F | 156,344 | $15,634.40 | $295.04 |
| Anthony Centone | Schedule F | 25,000 | $2,500.00 | $47.18 |
| Gerelli Insurance | Schedule F | 18,000 | $1,800.00 | $33.97 |
| Jim Reeds Truck | Schedule F | 8,000 | $800.00 | $15.10 |
| | Total: | 215,885.91 | $21,588.59 | $407.40 |

*Carmel Terminals holds the Allowed Unsecured Deficiency Claim which is being treated the same as all other Unsecured Claims.

**4. Class 4-Equity Interests.** Class 4 consists of the Allowed Equity Interest of William Catucci, the sole owner of Debtor.

**Treatment**- The holder of the Class 4 Equity Interest shall have his equity interest revest due to his contribution of new value in the amount of $10,000 Cash on the Effective Date.

**Right to Vote.** The holder of the Class 4 Equity Interest is not impaired under the Plan and is deemed to accept the Plan.

## ARTICLE 4

## IMPLEMENTATION OF THE PLAN

Payments to holders of Allowed Claims under the Plan will be made by the Debtor or Reorganized Debtor from (a) Cash on hand as of the Effective Date, (b) Cash realized from the Debtor's or Reorganized Debtor's business operations following the Effective Date, and (c) Cash

contributed or loaned by equity holders. Professional fees for services rendered and expenses incurred by the Debtor's attorneys subsequent to the Effective Date in connection with the Plan or the Debtor's chapter 11 case, may be paid by the Debtor without prior court approval, to the extent that Section 1123(a)(6) of the Code is applicable.

## ARTICLE 5
## PROVISIONS GOVERNING DISTRIBUTIONS

**1. Disbursements.** All distributions under the Plan shall be made by the Debtor/ Reorganized Debtor.

**2. Rights and Powers of the Debtor.** The Debtor/Reorganized Debtor shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) direct that all distributions contemplated by the Plan be made, (iii) prosecute, settle and enforce any objections or other causes of action on behalf of the Debtor's estate, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

**3. Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, only the Debtor shall have standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Code and Bankruptcy Rules.

**4. No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim until such Disputed Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead, any monies that otherwise would be paid if a Disputed Claim were Allowed shall be retained by the Debtor until such time as the Claim is finally Allowed at which time such

withheld Cash shall be paid to the holder of such Allowed Claim.

     **5. Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is returned by the recipient of the distribution, no further distribution hereunder shall be made to such creditor unless such creditor notifies the Debtor in writing of its correct address. Any undeliverable distribution shall revert to the Debtor/Reorganized Debtor. Debtor shall make reasonable efforts to locate holders of Allowed Claims.

## ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     To the extent the Debtor is a party to an executory contract or unexpired lease which has not otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute an order authorizing the assumption of such executory contract or unexpired lease pursuant to Section 365 of the Code.

## ARTICLE 7

## MISCELLANEOUS PROVISIONS

     **1. Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan.

     **2. Compliance with Tax Requirements.** In connection with the Plan, the Debtor/Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

     **3.Due Authorization by Creditors.** Each and every creditor who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan and that there are no outstanding liens,

encumbrances, commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

**4. Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**5. Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**6. Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

**7. Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

**8. Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) to the Debtor at: Bronson Law Offices, P.C., 480 Mamaroneck Avenue, Harrison, NY 10528, Attention H. Bruce Bronson, Esq.;

(b) If to any creditor at (i) the address set forth on the respective proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor after the Effective Date; or (iii) the address reflected in the Bankruptcy Schedules if no proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

(d) if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

**9. Governing Law.** The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

**10. Other actions.** Nothing contained herein shall prevent the Debtor from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

**11. Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

## ARTICLE 8

## DISCHARGE OF DEBTS

On the Confirmation Date, the Debtor will be discharged from any debt that arose before Confirmation of the Plan, subject to the occurrence of the Effective Date and the Plan shall be binding on all parties in interest, to the following extent specified in Sections 1141(d)(1)(A) and 1141(a) and (b) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in Section 1141(d)(6)(A) of the Code if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in Section 1141(d)(6)(B) of the Code.

## ARTICLE 9

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain

jurisdiction until this case is closed to perform the following actions:

        (a) Ensure that the Plan is fully consummated;

        (b) Resolve all matters arising under or relating to the Plan, including, without limitation, its enforcement and interpretation;

        (c) Allow, disallow, determine, liquidate or classify, any Claims;

        (d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in the bankruptcy case;

        (e) Resolve any motions or applications still pending prior to the Effective Date;

        (f) Enter such orders as may be necessary or appropriate to implement or consummate the provision of the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with the bankruptcy case; and

        (g) Enter a Final Decree concluding the bankruptcy case.

## ARTICLE 10

## CLOSING THE CASE

**1. Bankruptcy Fees.** All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid through the entry of a Final Decree, or conversion or dismissal of the Debtor's bankruptcy case, whichever is earlier.

**2. Post-Confirmation Reports.** After Confirmation, the Debtor shall file quarterly status reports, and schedule such status conferences as may be necessary until the case is closed.

**3. Closing the Case.** Within 14 days following the full administration of the estate, the Debtor shall file, on notice to the United States trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

Dated: Harrison, NY
      May 3, 2016

**CATUCCI HOME HEATING OIL, INC.**

By:*/s/ William Catucci*
      William Catucci,
      President

                                         Bronson Law Offices, P.C.

                                         by:*/s/ H. Bruce Bronson*
                                         H. Bruce Bronson
                                         General Bankruptcy Counsel
                                         *Catucci Home Heating Oil, Inc.*
                                         Debtor and Debtor-in-Possession